PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE FRANK ANTHONY ARENAS, doing business as FA Husbandry LLC, doing business as FSA LLC, doing business as Twenty Eighth Larimer LLC, and SARAH EVE ARENAS, | BAP No. CO-14-046 |
| Debtors. | Bankr. No. 14-11406 Chapter 7 |
| FRANK ANTHONY ARENAS and SARAH EVE ARENAS, | |
| Appellants, | OPINION |
| v. | |
| UNITED STATES TRUSTEE, | |
| Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado
_____

Daniel J. Garfield of Foster Graham Milstein & Calisher LLP, Denver, Colorado, for Appellants.

Noah M. Schottenstein, Trial Attorney, Executive Offices of the United States Trustee, Department of Justice (Ramona D. Elliott, Deputy Director/General Counsel and P. Matthew Sutko, Associate General Counsel, Executive Offices of the United States Trustee, Department of Justice, Washington, D.C.; Patrick S. Layng, United States Trustee for Region 19, Gregory Garvin, Assistant United States Trustee, and Alan K. Motes, Trial Attorney, United States Trustee, Department of Justice, Denver, Colorado with him on the brief), Washington, D.C., for Appellee.

_____

Before CORNISH, NUGENT, and SOMERS, Bankruptcy Judges.
_____

NUGENT, Bankruptcy Judge.

Possessing, growing, and dispensing marijuana and assisting others to do that are federal offenses. But like several other states, Colorado has legalized these acts and heavily regulates them, triggering a flourishing marijuana industry there. Can a debtor in the marijuana business obtain relief in the federal bankruptcy court? No.

In the *Marrama* case, the United States Supreme Court held that a debtor who is involved in unlawful or deceitful conduct may not convert his Chapter 7 case to Chapter 13 because the conduct betrays a lack of good faith that would bar confirmation under 11 U.S.C. §1325(a)(3).[1] Section 707(a)(1) allows a Chapter 7 case to be dismissed for cause, including unreasonable prejudicial delay to creditors. A debtor's conduct may demonstrate a lack of good faith that amounts to such cause.

Frank Arenas is licensed in Colorado to grow and dispense medical marijuana. He and Sarah Arenas leased a building to third parties who dispense medical marijuana from it. After litigation with the renters resulted in a state court judgment against them, the Arenases filed a Chapter 7 petition that they later attempted to convert to Chapter 13. The United States Trustee ("UST") objected to the conversion motion and instead asked

---

[1]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

2

that the case be dismissed.  The bankruptcy court found that even though the debtors'

conduct was legal under Colorado law, it violated the federal Controlled Substances Act,

21 U.S.C. § 801 et seq. (the "CSA").  For that reason, the bankruptcy court not only

denied the debtors' motion to convert their Chapter 7 case to Chapter 13, but also

concluded that the debtors could not receive Chapter 7 relief because engaging in federal

criminal conduct demonstrated a lack of good faith that would bar confirmation of their

Chapter 13 plan and was cause to dismiss their Chapter 7 case, too.  We affirm.

## I.      Factual Background

The debtors jointly own a commercial building in Denver that consists of two

units (the "Property").  Mr. Arenas grows and wholesales marijuana in one unit.[2]  He and

Sarah Arenas lease the other unit to Denver Patients Group, LLC ("DPG"), a marijuana

dispensary.  While Mr. Arenas' cultivation and sale of marijuana, and the debtors' leasing

of space to a marijuana dispensary are lawful activities under Colorado state law, they

violate the CSA.[3]

---

[2]      There is no evidence that Mrs. Arenas participates in the growing business.
Mr. Arenas possesses all of the required licenses and permits necessary to legally engage
in his business under Colorado law.

[3]      21 U.S.C. § 856(a) makes it unlawful to–

   (1) knowingly open, lease, rent, use, or maintain any place, whether permanently or
       temporarily, for the purpose of manufacturing, distributing, or using any
       controlled substance;

   (2) manage or control any place, whether permanently or temporarily, either as an
       owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and
       intentionally rent, lease, profit from, or make available for use, with or without

3

The debtors filed their Chapter 7 bankruptcy petition after they brought an eviction action against DPG in state court that resulted in a $40,000 attorney's fees award against them even before the state court addressed DPG's counterclaims against them for $120,000 in damages. Lacking the resources to pay the $40,000 judgment or defend the counterclaims, the debtors filed a Chapter 7 petition on February 12, 2014.[4] According to their schedules, Mrs. Arenas is disabled and receives monthly pension benefits and social security totaling $2,977.[5] The family's remaining monthly income of $4,265 stems from rental income and Mr. Arenas' marijuana business.[6] Their monthly expenses are approximately $7,235, making their monthly net income $7.[7] Their nonexempt assets are 25 marijuana plants (valued at $6,250)[8] and the Property[9] (collectively the "Assets").

---

compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 841(a)(1) makes it unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

[4]    Voluntary Petition, *in* Appellants' Appendix ("App.") at 17-20.

[5]    Schedule I at 2, *in* App. at 40; Statement of Financial Affairs, *in* App. at 46.

[6]    Schedule I at 2, *in* App. at 40.

[7]    Schedule J at 3, *in* App. at 43.

[8]    Arenas Dep. 20:9-13, June 19, 2014, *in* App. at 341. The plants were not listed in the debtors' Schedule B.

[9]    The value of the Property is unclear. Although the debtors' schedules indicate that the Property was heavily encumbered, some evidence indicated that the Property had value to the estate. *See* Schedule A, *in* App. at 25 (debtors listed the Property's value at $262,725 with secured claims against it of $295,957.51); Schedule D, *in* App. at 30 (same); Statement of Financial Affairs, *in* App. at 46 (Property generated rental income of $52,920 in 2012 and $41,008 in 2013); United States Trustee's Motion to Dismiss

4

After the meeting of creditors, the Chapter 7 trustee (the "Trustee") filed a Notice of No Distribution.[10] The Trustee subsequently withdrew the notice when DPG expressed an interest in purchasing the Property. The Trustee then sought guidance from the UST about whether he could administer the Property and whether Mr. Arenas' marijuana-related activities precluded the debtors from proceeding in Chapter 7.

The UST filed a motion to dismiss for cause under § 707(a). The UST alleged that it would be impossible for a Chapter 7 trustee to administer the Assets without violating federal law.[11] In response, the Arenases moved to convert their case to Chapter 13 and objected to the motion to dismiss. After an evidentiary hearing on both motions, the bankruptcy court issued a written order denying the debtors' motion to convert and granting the UST's motion to dismiss on August 28, 2014.[12] This appeal followed.

---

Debtors' Case Under 11 U.S.C. § 707(a) (the "Motion to Dismiss") ¶ 7, at 2, *in* App. at 71 ("[T]he Trustee has received preliminary communications concerning a potential purchase of the building by [DPG] . . . "). The bankruptcy court did not determine either the value of the Property or whether the debtors had any equity in the Property.

[10]   *See* Bankruptcy Dkt. Entry No. 16, *in* App. at 4. The Notice of No Distribution effectively abandons all nonadministered assets and closes the case.

[11]   Motion to Dismiss, *in* App. at 70-73. *See In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799 (Bankr. D. Colo. 2012).

[12]   Order on the United States Trustee's Motion to Dismiss and the Debtors' Motion to Convert (the "Appealed Order"), *in* App. at 229-37.

## II.    Appellate Jurisdiction and Standard of Review

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[13]  The Arenases timely filed their notice of appeal from the Appealed Order, and the parties have consented to this Court's jurisdiction by not electing to have this appeal heard by the United States District Court for the District of Colorado.  We have jurisdiction of this appeal.

An order granting or denying a motion to convert under § 1307(c) is reviewed for abuse of discretion as is an order dismissing a Chapter 7 petition for cause under § 707(a)(1).[14]  If in making those orders, the trial court makes conclusions of law, those are reviewable *de novo*, requiring an independent determination of the legal issues, giving no special weight to the bankruptcy court's decision.[15]  We review findings of fact for clear error and disturb them only when they lack factual support in the record or if we are

---

[13]    28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8001(e) (*now at* Fed. R. Bankr. P. 8005, effective Dec. 1, 2014); 10th Cir. BAP L.R. 8001-3 (*now at* 10th Cir. BAP L.R. 8005-1, effective Dec. 1, 2014).

[14]    *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (bankruptcy court has authority to immediately deny a motion to convert a Chapter 7 case to a Chapter 13 in lieu of a conversion order that postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors); S. REP. NO. 95-989, at 94 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5880 ("The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest."); *In re Isho*, Nos. UT-12-090, 11-30284, 2013 WL 1386208, *3 (10th Cir. BAP April 5, 2013) (determination of cause for dismissal pursuant to § 707(a) is within the discretion of the bankruptcy court).

[15]    *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

"left with the definite and firm conviction that a mistake has been made."[16] We focus on whether the bankruptcy court acted within the bounds of permissible choice in reaching its decision and whether that decision was properly grounded in the law. "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[17] A trial court abuses its discretion when it makes an "arbitrary, capricious or whimsical," or "manifestly unreasonable judgment."[18]

### III.    Analysis

The pivotal issue here is whether engaging in the marijuana trade, which is legal under Colorado law but a crime under federal law, amounts to "cause" including a "lack of good faith" that effectively disqualifies these otherwise eligible debtors from bankruptcy relief. We agree with the bankruptcy court that while the debtors have not engaged in intrinsically evil conduct, the debtors cannot obtain bankruptcy relief because their marijuana business activities are federal crimes.

---

[16]    *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953  (10th Cir. 1987)).

[17]    *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

[18]    *Id.* at 1504-05 (internal quotation marks omitted).

**A.     No abuse of discretion to deny motion to convert to Chapter 13, §§ 706, 1307, and 1325.**

While a Chapter 7 debtor may convert his case to Chapter 13 "at any time," § 706 requires that the debtor not have previously converted the case to Chapter 7 and that the debtor be eligible for Chapter 13 relief.  Section 706 provides in part:

> (a)  The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.  . . .
>            . . . .
> (d)  Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.[19]

Because the Arenases originally filed their case in Chapter 7, only the subsection (d) eligibility prong applies.  Section 109(e) provides that only individuals with regular income may be Chapter 13 debtors.[20]  Many courts consider a debtor's good faith to be a condition of Chapter 13 eligibility.[21]

---

[19]     11 U.S.C. §§ 706(a) and (d).

[20]     Section 101(30) defines "individual with regular income" as "[an] individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker."  The regular income requirement anticipates that the income is sufficient to fund the debtor's living expenses and the plan payments.  The debt limitation is not an issue in this appeal.

[21]     Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 5.1 at ¶ 5, Sec. Rev. Apr. 19, 2011, www.Ch13online.com.   ("Although not mentioned in the Code as a condition for eligibility for Chapter 13, many reported decisions have considered a debtor's 'good faith' at the threshold of a Chapter 13 case, typically in the context of a motion to dismiss.").

8

In *Marrama v. Citizens Bank of Mass.*, the United States Supreme Court held that a Chapter 7 debtor who had made pre-petition false statements and concealed assets from the trustee could not exercise his right to convert his case to Chapter 13 "at any time" because his pre- and post-petition lack of good faith rendered him ineligible for Chapter 13 relief.[22] Because of the debtor's lack of good faith, the court could dismiss his potential Chapter 13 case for cause under § 1307(c). In addition, the debtor's bad conduct prevented confirmation of any plan because good faith is an affirmative confirmation requirement under § 1325(a)(3). The Supreme Court equated "a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad faith" with a "ruling that the individual does not qualify as a Chapter 13 debtor."[23]

The bankruptcy court may dismiss a Chapter 13 case for cause. Section 1307(c) defines "cause" with a nonexclusive list of eleven examples.[24] One nonenumerated cause and one enumerated cause are important in this case. First, this Court has previously held that a debtor's lack of good faith—although not explicitly included in § 1307(c)— amounts to cause for dismissal under § 1307.[25] Second, "unreasonable delay by the

---

[22]     549 U.S. 365 (2007).

[23]     *Marrama,* 549 U.S. at 375.

[24]     11 U.S.C. § 1307(c)(1)-(11).

[25]     *In re Armstrong*, 303 B.R. 213, 218 (10th Cir. BAP 2004) (egregious prepetition conduct and other actions constituted bad faith, warranting dismissal of Chapter 13); *In re Davis*, 239 B.R. 573, 578-79 (10th Cir. BAP 1999) (cause for dismissal of Chapter 13 existed based on debtor's lack of good faith in filing bankruptcy, inability to propose a

debtor that is prejudicial to creditors,"[26] such as that brought about by inability to confirm a plan, may be cause for dismissal.[27] Had the debtors filed their original case as a Chapter 13, it would have been susceptible to dismissal for either reason.

The bankruptcy court denied the Arenases' motion to convert their Chapter 7 case to Chapter 13 because it concluded that "their reorganization would be funded from profits of an ongoing criminal activity under federal law and would necessarily involve the Chapter 13 Trustee in administering and distributing funds derived from the Debtors' violation of the CSA."[28] Because "[a]ny plan proposed by the Debtors would necessarily be executed by unlawful means . . . [the court was] unable to find, under § 1325(a)(3), that their plan [was] 'proposed in good faith *and not by any means forbidden by law*.'"[29]

---

feasible amendment to unconfirmable plan, debtor's lack of good faith in filing plan, and debtor's ineligibility for Chapter 7 based on a prior discharge) (citing *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992)).

[26]    11 U.S.C. § 1307(c)(1).

[27]    *In re Paulson*, 477 B.R. 740, 745-46 (8th Cir. BAP 2012) (cause for dismissal under § 1307 due to unreasonable delay stemming from the debtor's inability to get a plan confirmed); *In re Merhi*, 518 B.R. 705, 719-20 (Bankr. E.D.N.Y. 2014) (continuation of case when debtor cannot propose a confirmable debt adjustment plan constituted prejudicial delay to creditors under 11 U.S.C. § 1307(c)(1)); *In re Yarborough*, Case No. 12-30549, 2012 WL 4434053, *2 (Bankr. E.D. Tenn. Sept. 24, 2012) ("The right to convert [from chapter 7] to Chapter 13, however, is not absolute, and conversion may be denied where 'cause' would exist to convert or dismiss the debtor's Chapter 13 case under 11 U.S.C. § 1307(c), including inability to propose a confirmable plan and bad faith.") (footnote and citations omitted). *See also In re Ames*, 973 F.2d 849, 851-52 (10th Cir. 1992) (Chapter 12 bankruptcy may be dismissed due to failure to propose a confirmable plan).

[28]    Appealed Order at 5-6, *in* App. at 233-34.

[29]    *Id.* at 6-7, *in* App. at 234-35.

That was "cause for dismissal [under] § 1307(c) on account of the Debtors' bad faith due to their inability to propose a confirmable Chapter 13 plan."[30] On appeal, that conclusion is entitled to the most deferential standard of review, whether denial of the conversion motion was an abuse of discretion.[31]

We review the bankruptcy court's finding that the debtors' conduct showed a lack of good faith for clear error.[32] Courts evaluate a debtor's good faith case by case, examining the totality of circumstances.[33] Courts in the Tenth Circuit look to the eleven factors set forth in *Flygare v. Boulden.*[34] Courts should also consider "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."[35]

---

[30]     *Id.* at 6, *in* App. at 234.

[31]     *Marrama,* 549 U.S. at 375 (bankruptcy court has authority to immediately deny a motion to convert a Chapter 7 case to a Chapter 13 in lieu of a conversion order that postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors); S. REP. NO. 95−989, at 94 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5880 ("The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest.").

[32]     *In re Davis*, 239 B.R. 573, 576 (10th Cir. BAP 1999) ("Whether a Chapter 13 plan has been proposed in good faith is a question of fact subject to the clearly erroneous standard of review.").

[33]     *Id.* at 577.

[34]     709 F.2d 1344 (10th Cir. 1983).

[35]     *In re Cranmer*, 697 F.3d 1314, 1319 n.5 (10th Cir. 2012).

Only a few of the eleven *Flygare* factors are in play here. They include (1) the debtor's employment history, ability to earn and likelihood of future increases in income; (2) the burden the plan's administration would place on the trustee; and (3) the debtor's motivation and sincerity in seeking Chapter 13 relief.[36]

The debtors contend that when the bankruptcy court held that they could not propose a Chapter 13 plan in good faith, it erred by adopting a per se rule that debtors who are engaged in the marijuana business are not eligible for bankruptcy relief.[37] This oversimplifies the court's reasoning. The bankruptcy court applied the *Flygare* factors and concluded that the debtors couldn't propose a feasible plan. First, the Arenases' monthly income from sources other than marijuana was not enough to fund their plan. Even the debtors agree that the only way they can fund a plan is with the rental income from the marijuana dispensary. Without the rental income, their monthly expenses of $7,000 exceed their non-marijuana income by $4,000 a month. Even with the rental income, the plan is barely feasible because their Schedule I reflects a surplus of less than $8 a month, yielding at best, a nominal dividend.[38] Sarah Arenas is disabled and unable to work. That, combined with Frank Arenas' age and employment history, amply supports a finding that the debtors' income is unlikely to increase during the plan term. The court considered the debtors' "ability to earn and likelihood of future increases in

---

[36]     *Id.* at 1347-48.

[37]     Appellants' Opening Brief at 9, 29-30.

[38]     We recognize that nominal repayments alone do not violate the good-faith standard of § 1325(a)(3). Other factors, however, weigh against a good-faith finding.

12

income" and concluded that their plan is not likely confirmable because it is not feasible.[39]

Second, short of exposing him to physical harm, nothing could be more burdensome to the Trustee's administration than requiring him to take possession, sell and distribute marijuana Assets in violation of federal criminal law. There is no way the Trustee could administer the plan without committing one or more federal crimes.[40]

Finally, as for the debtors' "motivation and sincerity," the bankruptcy court found the debtors to be sincere and credible and took pains to emphasize that their motives in seeking bankruptcy relief were not improper.[41] That said, the court also recognized that lack of good faith carries an objective rather than a subjective meaning. If the debtors are incapable of proposing a confirmable plan, it is objectively unreasonable for them to seek Chapter 13 relief whether their intentions are kindly or not. We concur in this view.

Plenty of evidence supports the bankruptcy court's finding of lack of good faith. We affirm that finding and need not address whether the debtors' plan was "proposed by

---

[39]     The debtors' suggestion that the United States Government's decision not to prosecute Colorado participants in the marijuana business somehow addresses the feasibility and good-faith question fails to account for the possibility that subsequent Administrations and Attorneys General could exercise their prosecutorial discretion to take a different approach. As long as marijuana remains a controlled substance, a matter left entirely to Congress, people who engage in the Colorado marijuana trade remain at risk of federal criminal prosecution, regardless of the Department of Justice's current posture.

[40]     The CSA criminalizes virtually every aspect of selling, manufacturing, distributing and profiting from the use of controlled substances. *See* 21 U.S.C. §§ 841(a)(1) and 856(a).

[41]     Appealed Order at 6, n.8, *in* App. at 234.

any means forbidden by law."  Instead, we turn to the fate of the Arenases' Chapter 7 petition.

**B.     No abuse of discretion to dismiss debtors' Chapter 7 case, § 707(a)(1).**

After it concluded that the debtors could not convert their case to Chapter 13, the bankruptcy court granted the UST's motion to dismiss their Chapter 7 case for "cause" under § 707(a).  Section 707(a) provides "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—(1) unreasonable delay by the debtor that is prejudicial to creditors."  "Cause" is not defined in the Code. Determining what amounts to cause for dismissal under § 707(a) is within the court's discretion.[42]  As we have previously held:

> Dismissal factors that are often considered are: the best interests of both debtor and creditors; trustee's consent or objection; potential to delay creditor payments; good or bad faith in seeking dismissal; and the possibility of payment priority becoming reordered outside of bankruptcy.  Emphasis is typically given to any prejudice that dismissal might cause the estate's creditors.[43]

The Supreme Court has held that "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy."[44]  Bankruptcy relief is merely a privilege.[45]

---

[42]     *In re Isho*, Nos. UT-12-090, 11-30284, 2013 WL 1386208, at *3 (10th Cir. BAP April 5, 2013).

[43]     *Id.* (citations omitted).

[44]     *United States v. Kras*, 409 U.S. 434, 446 (1973).

[45]     *In re Michael*, 285 B.R. 553, 556 (Bankr. S.D. Ga. 2002) (citing *In re Sochia*, 231 B.R. 158, 160 (Bank. W.D.N.Y. 1999); *In re Khan*, 35 B.R. 718, 719 (Bankr. W.D. Ky. 1984)).

The bankruptcy court concluded that it would be impossible for the Chapter 7 Trustee to administer the Arenases' estate because selling and distributing the proceeds of the marijuana assets would constitute federal offenses. Because of that, the creditors had no expectation of receiving any dividend while the debtors would receive a discharge. Meanwhile, the creditors are stayed from enforcing their state law rights. The impossibility of lawfully administering the estate constituted cause for dismissal under § 707(a).[46] The debtors argue here that the Trustee could have abandoned the marijuana assets. They say that § 707(a) "cause" should be limited to circumstances where the debtor's actions have frustrated the administration of the estate or a bankruptcy purpose and that they have not engaged in such conduct.[47]

In fact, the debtors have violated federal law and apparently intend to continue to do so.[48] Selling the plants and the building would require the Trustee to violate federal law. If the Trustee abandoned the Assets, the debtors would retain their business after exposing the Trustee to grave risk, provide the creditors with little or no recovery, and receive a discharge, protected all the while from their creditors' collection efforts by the automatic stay and then the discharge injunction. That is the epitome of prejudicial delay.

---

[46]    Appealed Order at 5, *in* App. at 233.

[47]    Appellants' Opening Brief at 23.

[48]    July 30, 2014 Hrg Tr. at 18, *in* App. at 198.

The bankruptcy court did not abuse its discretion by dismissing the debtor's Chapter 7 case.[49]

As for the debtors' claim that the bankruptcy court should have required the Trustee to abandon the marijuana assets if he couldn't administer them, they never raised that in the bankruptcy court.[50] It is not clear that a bankruptcy court may order a trustee to abandon assets *sua sponte*.[51] And even if the court can do that, this bankruptcy estate, shorn of its marijuana assets, would likely yield no dividend to the creditors. The debtors would get a discharge and get to keep (via abandonment) their marijuana assets while being protected from collection activities. This also strikes us as prejudicial delay that amounts to cause for dismissal.

---

[49] *In re Medpoint Mgmt.*, LLC, 528 B.R. 178, 184-86 (Bankr. D. Ariz. 2015) (finding reasoning in *Arenas* and *Rent Rite* persuasive; dual risks of forfeiture of assets and a trustee's inevitable violation of CSA constitute cause to dismiss involuntary petition under § 707(a)).

[50] *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (appellate court will not consider issues not raised below); *Pritner v. COFCO Credit Co., LLC (In re Pritner)*, Nos. WO-040-080, 99-16898-BH, 03-1371-BH, 2005 WL 705363, at *5 (10th Cir. BAP 2005) (refusing to consider argument not raised below).

[51] Section 554(b) states: "(b) *On request of a party in interest and after notice* and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b) (emphasis added).

## IV.    Conclusion

In this case, the debtors are unfortunately caught between pursuing a business that the people of Colorado have declared to be legal and beneficial, but which the laws of the United States—laws that every United States Judge swears to uphold—proscribe and subject to criminal sanction.  Because of that, neither a Chapter 7 nor 13 trustee can administer the most valuable assets in this estate.  Without those assets or the marijuana based income stream, the debtors cannot fund a plan without breaking the law, and are therefore ineligible for relief under Chapter 13.  In reaching that conclusion, the bankruptcy court stayed well within the bounds of permissible choice and in no way abused its discretion in denying the debtors' motion to convert.

Administering the debtors' Chapter 7 estate would require the Trustee to either violate federal law by possessing and selling the marijuana assets or abandon them.  If he did the former, the Trustee would be at risk of prosecution; if he did the latter, the creditors would receive nothing while the debtors would retain all of their assets and receive a discharge as well.  Either amounts to prejudicial delay that is sufficient to demonstrate cause to dismiss their Chapter 7 case under § 707(a).  The bankruptcy court did not abuse its discretion in granting the UST's motion to dismiss.  Accordingly, we AFFIRM the bankruptcy court's order.